**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **AMERICAN GENERAL LIFE INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5069** |
| **ULYSSES GIBSON, et al** | **SECTION: "G"(1)** |

**ORDER**

This interpleader action was initiated by Plaintiff / Stakeholder American General Life Insurance Company, Co. ("Plaintiff") in order to determine the interests of Defendants / Claimants Nakia Harris, Ulysses S. Gibson, Forethought Capital Funding, Inc. ("Forethought"), and Charbonnet-Labat Funeral Home, Inc. ("Charbonnet-Labat") to the proceeds of a life insurance policy issued to Glenda Gibson ("Decedent"). Presently before the Court is Defendant Nakia Harris's "Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment."[1] No opposition to this motion has been filed into the record. Having reviewed the memorandum in support and the applicable law, the Court will grant-in-part and deny-in-part the pending motion, granting it insofar as it seeks summary judgment, and denying it insofar as it seeks attorney's fees.

**I. Background**

**A.  Factual Background**

In Plaintiff's "Complaint for Interpleader Relief,"[2] Plaintiff contends that in March 2000, Glenda M. Taylor, "later known as Glenda M. Gibson," applied for a life insurance policy providing for $35,000 in benefits, with her then-husband Alton Taylor, Jr. listed as the primary beneficiary,

---

[1] *Id.*

[2] Rec. Doc. 1.

as well as a "rider for term life insurance for Alton Taylor, Jr."[3] Subsequently, Plaintiff asserts, it issued Decedent a $35,000 life insurance policy, Policy No. 6201650718.[4] Plaintiff contends that Decedent, in a form dated January 2010, designated her then-husband Ulysses Gibson as primary beneficiary, requested that her name be changed to Glenda Gibson, and also named her children Nicole Causey and Nakia Harris, and Alton Taylor III as contingent beneficiaries.[5] Plaintiff represents that it confirmed these changes in letters dated February 2, 2010.[6] Plaintiff contends that on October 11, 2012, the Decedent designated her daughter, Nakia Ann Harris, as primary beneficiary of the policy, and Nakia Ann Harris, Nicole Causey, and Alton Joseph Taylor III as contingent beneficiaries.[7] Plaintiff asserts that on November 26, 2012, it learned that Decedent had died.[8]

Plaintiff alleges that it received a letter from Ulysses Gibson on November 26, 2012 that stated, in part, that:

> On October 11, 2012, changes were made to policy #0201650718 via fax. My wife, Glenda Gibson and I have had this policy for many years. At the time the beneficiary was changed my wife was severely ill. She was diagnosed with bone cancer, chromes disease [sic], asthma, and diabetes. She was under the influence of strong narcotics such as morphine and oxytocin [sic] and was mentally incapable of making such a drastic decision. Considering the above if the signature on the document is actually my wife's signature she must have been coerced into signing the form or unclear as to the content or changes being made. My wife was admitted into Louisiana State

---

[3] *Id.* at p. 2.

[4] *Id.* at p. 3.

[5] *Id.* According to Plaintiff, Nakia Ann Harris is listed twice: once as primary beneficiary, and once as contingent beneficiary. *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at p. 4.

2

> Medical Center hospital on October 12, 2010, the day after the document was allegedly signed. Please take the time to research and review this situation prior to distributing funds on this policy. For further information regarding my wife's medical information I am willing to sign any documents necessary to release her medical records.

Plaintiff asserts that on November 30, 2012, it received from Forethought Capital Funding, Inc. "an assignment dated November 27, 2012 in which Nakia Harris assigned to Forethought Capital Funding, Inc. $12,509.10 of the Policy benefit relating to services provided by Mt. Olive Cemetery."[9] Plaintiff contends that on December 3, 2012, it received another copy of the November 27, 2012 Assignment from Harris, plus a "Claimant's Statement dated November 29, 2013 from Ms. Harris."[10]

Plaintiff maintains that on December 4, 2012, it left a Ulysses Gibson a voice mail message informing him that in light of his November 26, 2012 letter asserting that the Decedent "was under the influence of pain medications at the time [of] the requested change of beneficiary," he "would need to submit a statement" from the physician treating the Decedent on or around October 11, 2012.[11] Plaintiff asserts that on December 7, 2012, it received a facsimile from Lisa R. Mondello of Mondello Investigative & Paralegal Services, Inc., stating that "Ulysses S. Gibson had received [Plaintiff's] message" requesting a statement from Decedent's treating physician, and that Ulysses S. Gibson had retained her to assist him in obtaining the requested records.[12]

---

[9] *Id.* at p. 4.

[10] *Id.* at p. 5.

[11] *Id.*

[12] *Id.*

3

Plaintiff contends that around January 14, 2013, it received from Nakia Harris "a completed Claimant's Statement, Death Certificate for the Decedent, and" another "Assignment of Proceeds of Insurance," dated November 28, 2012, "in which Ms. Harris assigned to Charbonnet-Labat Funeral Home $10,951.40 of the Policy benefit for funeral services and merchandise for the Decedent."[13]

Plaintiff asserts that Forethought again notified it of the assignment of $12,509.10 on February 12, 2013, and attached to its letter a copy of Decedent's Death Certificate.[14] Plaintiff contends that on March 19, 2013, it received from Nakia Harris a "March 18, 2013 letter" from Victoria LaBruzzo, N.P. and Dr. Hana Safah of Tulane Hospital, stating, in part, that:

> This is to notify you that Glenda Gibson was diagnosed with metastic multiple myeloma in September 2012. She was admitted to Tulane Hospital November 1, 2012 for this disease. During the entire time of her diseased [sic] she remained mentally competent. If you have any further questions please fee free to contact my nurse practitioner, Victoria LaBruzzo, NP . . .

Plaintiff contends that in a letter dated May 28, 2013, it notified Harris, Forethought, and Ulysses Gibson that although it admitted its liability for the $35,000 policy proceeds, it "could not determine to whom the Policy benefits are payable without incurring the risk of multiple liability."[15] In that letter, Plaintiff maintains, it notified Harris, Forethought, and Ulysses Gibson that it would file an interpleader action "if it did not hear from them within 30 days," or that if "they advised that

---

[13] *Id.*

[14] *Id.* at p. 6.

[15] *Id.* at pp. 6–7.

4

no agreement" about the distribution of the policy proceeds "could be reached."[16] Plaintiff contends

that the claimants have been unable to reach agreement.[17]

**B.**    *Procedural Background*

Plaintiff filed its "Complaint for Interpleader Relief"[18] on July 12, 2013. On July 15, 2013,

Plaintiff filed an *ex parte* "Motion to Deposit Funds."[19] This Court granted Plaintiff's motion on July

16, 2013.[20] Nakia Harris filed an answer on September 11, 2013.[21] On February 11, 2014, Plaintiff

filed an *ex parte* "Motion for Entry of Order of Default Against Defendants Forethought Capital

Funding, Inc., Charbonnet-Labat Funeral Home, Inc., and Ulysses Gibson,"[22] asserting that although

these defendants had been served on November 27, 2013, January 3, 2014, and January 4, 2013,

respectively, none of these defendants had yet filed responsive pleadings.[23] The Clerk of Court

granted Plaintiff's *ex parte* motion on February 11, 2014, causing default to be entered against

Forethought, Charbonnet-Labat, and Ulysses Gibson.[24]

---

[16]  *Id.* at pp. 6–7.

[17]  *Id.* at p. 7.

[18]  Rec. Doc. 1.

[19]  Rec. Doc. 4.

[20]  Rec. Doc. 6.

[21]  Rec. Doc. 8.

[22]  Rec. Doc. 19.

[23]  *Id.* at p. 2.

[24]  Rec. Doc. 21.

Charbonnet-Labat filed an answer on February 13, 2014.[25] Forethought filed an *ex parte* motion to set aside the entry of default against it on June 20, 2014.[26] On June 26, 2014, the Court granted Forethought's *ex parte* motion, vacating the Court's order granting Plaintiff's motion for entry of default against Forethought.[27] On June 27, 2014, Harris filed the pending "Motion for Judgment on the Pleadings, or, Alternatively, for Summary Judgment."[28] On July 8, 2014, Forethought filed an *ex parte* "Motion for Relief from Judgment," requesting that this Court grant it "relief from the default judgment entered by the Court on February 11, 2014."[29] On July 10, 2014, the Court, noting that it had previously ordered a Preliminary Default, rather than a Default Judgment, against Forethought, granted Forethought's motion.[30]

On July 22, 2014, Plaintiff filed a "Motion for Order of Final Decree of Interpleader."[31] Forethought filed an answer on July 23, 2014.[32] On August 22, 2014, the Court granted Plaintiff's "Motion for Order of Final Decree of Interpleader," dismissing Plaintiff as a party.[33]

---

[25] Rec. Doc. 22.

[26] Rec. Doc. 34.

[27] Rec. Doc. 21.

[28] Rec. Doc. 40.

[29] Rec. Doc. 46.

[30] Rec. Doc. 47.

[31] Rec. Doc. 48.

[32] Rec. Doc. 50 at pp. 4–5.

[33] Rec. Doc. 53.

## II. Parties' Arguments

In support of her "Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment,"[34] to which no opposition has been filed into the record, Harris contends that she "filed an answer asking the Court to allow her to obtain all of the insurance proceeds in the registry of the Court because she was the only named primary beneficiary under the policy at the time of Glenda Gibson's death."[35]  According to Harris, "all of the other defendants in this matter failed to timely file an Answer," leading the Court to enter default against them.[36] Harris asserts that "[a]lthough the default against Forethought has been vacated, Forethought is not making any further claims to the insurance proceeds."[37]

Harris maintains that although Charbonnet-Labat filed an answer, that answer "was filed after this Court issued an Order of Default" against Charbonnet-Labat, making Charbonnet-Labat's answer "untimely."[38] Harris maintains that "there is no dispute as to the material facts" upon which Harris's claims are based.[39] Therefore, Harris asserts, "this Court should grant her motion for judgment on the pleadings."[40]

---

[34] Rec. Doc. 40.

[35] *Id.* at p. 4.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

Harris, contends, in the alternative, that the Court should grant summary judgment in her favor "as the sole primary beneficiary of the Policy on the date of [Decedent's] death."[41] According to Harris, the only party that has allegedly challenged "Glenda Gibson's"[42] status as primary beneficiary is Ulysses Gibson."[43] Harris asserts that although Ulysses Gibson represented to Plaintiff that Decedent was "mentally incapable" of changing the primary beneficiary on the policy, Ulysses Gibson "has presented no evidence to [Plaintiff] or to this Court to support such a claim," whereas the March 18, 2013 letter written by Dr. Safah states that Decedent "remained mentally competent" while she was ill.[44] "Regardless," Harris avers, Ulysses Gibson "did not file an answer in this proceeding and therefore has not made a timely claim for the proceeds of the policy."[45]

In support of summary judgment, Harris asserts that the following facts are "material" and "undisputed:" (1) Decedent died on November 26, 2012 (2) the insurance policy at issue "was in full force and effect on November 26, 2012;" (3) the insurance policy listed Nakia Harris as the "sole primary beneficiary;" (4) Plaintiff filed this interpleader action "so that all interested parties making claims to the Policy could be heard by this Court;" and (5) Nakia Harris "is the only defendant to file a timely Answer asking the Court for the policy proceeds."[46]

---

[41] *Id.*

[42] *Id.* It is not clear who Harris is referring to here, since Harris later identifies Glenda Gibson as the Decedent policyholder.

[43] *Id.* at p. 5.

[44] *Id.*

[45] *Id.*

[46] *Id.*

Based on these allegedly undisputed facts, Harris urges the Court to grant judgment on the pleadings or, alternatively, summary judgment because, as a matter of law, "she is entitled to [j]udgment in her favor."[47] Harris also contends that this Court should award $11,615.31 in attorney's fees, representing one-third of the insurance proceeds, pursuant to her contingency fee agreement with her attorney, with the balance payable to her.[48]

## III. Law and Analysis

As an initial matter, the Court notes that Harris's motion is unopposed. "Although failure to respond to a motion will be considered a statement of no opposition, the court is not required to grant every unopposed motion."[49] Rather, the Court will only grant unopposed motions that have merit, after having considered the papers before it.[50]

### A.      *Legal Standards*

#### 1.      **Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Wright and Miller describe practice under Federal Rule of Civil Procedure 12(c) as follows:

> [A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice. The motion for a judgment on the pleadings only has utility when all

---

[47] *Id.* at p. 7.

[48] *Id.*

[49] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350 (5th Cir. 1993).

[50] *See John v. State of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698 (5th Cir. 1985); *Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.[51]

In *Voest–Alpine Trading USA Corp. v. Bank of China*, the Fifth Circuit held that "[j]udgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain."[52] In resolving a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts in the Fifth Circuit use "the same standard applicable to a [Federal] Rule [of Civil Procedure] 12(b)(6) motion."[53] Under this standard, the "plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face."[54] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[55] In considering whether a plaintiff has stated a plausible claim for relief, the Court "[does] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" unsupported by factual allegations.[56]

Pursuant to Federal Rule of Civil Procedure 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

---

[51] CHARLES ALAN WRIGHT, ARTHUR R. MILLER, *ET AL.*, 5C FEDERAL PRACTICE & PROCEDURE § 1367 (3d Ed. 2014).

[52] 142 F.3d 887, 891 (5th Cir. 1998).

[53] *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

[54] *Id.* (citing *Gentilello*, 627 F.3d at 544).

[55] *Gentilello*, 627 F.3d at 544.

[56] *Id.* (citations omitted).

Addressing what materials may be considered when deciding a Rule 12(c) motion for judgment on the pleadings, the Fifth Circuit has cited cases addressing 12(b)(6) motions.[57] In deciding a 12(b)(6) motion, courts in the Fifth Circuit may only consider "the contents of the pleadings, including attachments thereto . . . [and] documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."[58]

## 2.     Summary Judgment

Federal Rule of Civil Procedure 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Pursuant to that rule, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[59] A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[60] In deciding a motion for summary judgment, the Court "views all facts in the light most favorable to the nonmovant, and draws all reasonable inferences in the nonmovant's favor."[61] Nonetheless, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

---

[57] 142 F.3d at 891 (citing *Baker v. Putnal*, 75 F.3d 190, 197–98 (5th Cir. 1996)).

[58] *Brand Coupon Network, L.L.C. v. Catalina Marketing Group*, 748 F.3d 631, 635 (5th Cir. 2014).

[59] FED. R. CIV. P. 56.

[60] *U.S. v. Marshall*, 771 F.3d 854 (5th Cir. 2014) (citations omitted).

[61] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1129 (5th Cir. 2014) (citations omitted).

for trial."[62] The nonmovant "cannot create a genuine issue of material fact with 'some metaphysical doubt as to the material facts,' 'conclusory allegations,' or 'by only a scintilla of evidence.'"[63] Further, "when evidence exists in the summary judgment record but the nonmov[ing party] fails even to refer to it in response to the motion for summary judgment, that evidence is not properly before the district court."[64]

### 3.      Applicable Standard

Harris has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), or, alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Thus, the Court is initially required to determine how it will construe the present motion. In *Rhoades v. Casey*, the Fifth Circuit stated that the district court may adjudicate the interests of interpleader claimants "at summary judgment."[65] Following *Rhoades*, the Court will apply the summary judgment standard here.

### B.      *Analysis*

### 1.      Material to be Considered

Plaintiff's complaint,[66] plus three answers, have been filed in this action: Harris's,[67]

---

[62] *Id.*

[63] *Id.* (citations omitted).

[64] *Malacara v. Gerber*, 353 F.3d 393, 405 (5th Cir. 2003).

[65] *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) ("A district court has broad powers in an interpleader action. An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met . . . If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment.").

[66] Rec. Doc. 1.

[67] Rec. Doc. 8.

Charbonnet-Labat's,[68] and Forethought's.[69] Ulysses S. Gibson, although served as discussed below, did not file an answer. Although Plaintiff attached a multitude of documents to its complaint, including the correspondence and documents it references in its complaint. Since Harris refers to these documents in her motion, the Court will consider them in determining whether the instant motion has merit and should be granted.

Harris contends that Charbonnet-Labat's answer was "untimely filed" after this Court issued its Order placing Charbonnet-Labat in default.[70] The Clerk of this Court issued an entry of default against Charbonnet-Labat February 11, 2014,[71] and Charbonnet-Labat filed an answer on February 13, 2014.[72] Charbonnet-Labat has not since moved to set aside the entry of default. Although the entry of default is a necessary step in the process culminating in a default judgment,[73] other courts have described the entry of default as merely "intermediate and ministerial" in nature,[74] and this Court has found no authority directly addressing how the Court should construe an answer filed after the entry of default in the context of a summary judgment motion.

The Fifth Circuit's unpublished opinion in *DirecTV, Inc. v. Young* provides an illustrative reference point.[75] In that case, the district court clerk entered default against the defendant, and the

---

[68] Rec. Doc. 22.

[69] Rec. Doc. 50.

[70] Rec. Doc. 40–1 at p. 4.

[71] Rec. Doc. 21.

[72] Rec. Doc. 22.

[73] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

[74] *See, e.g. Francois v. Parish*, No. 14-338, 2014 WL 4954643 (E.D. La. Oct. 2, 2014).

[75] 195 Fed. App'x 212, 215 (5th Cir. 2006).

plaintiff subsequently moved for default judgment.[76] Shortly after the plaintiff moved for default judgment, the defendant filed an answer.[77] The plaintiff, in turn, filed a motion to strike the defendant's answer pursuant to Federal Rule of Civil Procedure 12.[78] The defendant filed no opposition to the plaintiff's motions, and the district court, in turn, granted both motions.[79] The Fifth Circuit affirmed, reasoning that because the plaintiff's motion to strike was unopposed and because the defendant had not acted to cure his default, the district court did not abuse its discretion in striking the pleadings pursuant to Federal Rule 12.[80]

In the present case, as in *DirecTV*, Charbonnet-Labat filed an answer after entry of default, but has not moved to set aside the entry of default nor filed any opposition to the present motion. The present case is unlike *DirecTV*, however, in that Harris has not sought a default judgment, has not moved to strike Charbonnet-Labat's untimely answer, and indeed has only argued that the answer is "untimely," without specifying what effect this untimeliness should have in the context of the present motion. In the absence of some basis to distinguish Charbonnet-Labat's answer from other answers filed in this matter, the Court will consider Charbonnet-Labat's answer along with the others, to any extent that the answer may be relevant to the present motion.

---

[76] *Id.* at 213.

[77] *Id.*

[78] *Id.*

[79] *Id.* at 214.

[80] *Id.* at 215.

### 2.      Availability of Summary Judgment

Harris contends that summary judgment in her favor is appropriate here, since she was "the sole beneficiary of the Policy on the date of [Decedent's] death."[81] Therefore, the Court initially considers whether summary judgment is appropriate at the present stage of the instant interpleader action. Plaintiff initiated this action pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. Interpleader actions are governed by both § 1335 and the Federal Rules of Civil Procedure. In full, Federal Rule of Civil Procedure 22 provides as follows:

(a)     Grounds.

(1)     By a Plaintiff. Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

(A)     the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

(B)     the plaintiff denies liability in whole or in part to any or all of the claimants.

(2)     By a Defendant. A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

(b)     Relation to Other Rules and Statutes. This rule supplements--and does not limit--the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules.

The federal statute at issue here, 28 U.S.C. § 1335, provides:

(a)     The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession

---

[81]  Rec. Doc. 40–1 at p. 4.

money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1)     Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b)     Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another

Addressing the order of proceedings in interpleader actions, the Fifth Circuit instructed in *Rhoades* that:

A district court has broad powers in an interpleader action. An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment.[82]

In the present case, this Court, having found that interpleader was available, issued an order discharging Plaintiff, enjoining the parties from "instituting or prosecuting any proceedings" against

---

[82] *Rhoades*, 196 F.3d at 600.

Plaintiff, resolving all liens against the insurance proceeds, and ordering the "Defendants / Claimants and other parties to this case . . . [to] litigate their claims and contentions regarding the subject Funds without further involving [Plaintiff]."[83] Thus, the Court has completed the first step of the interpleader inquiry outlined in *Rhoades.* Wright and Miler, cited in *Rhoades*, describe the second step of the interpleader process as follows:

> The second stage of interpleader involves the determination of the respective rights of the claimants to the stake. At this juncture, each claimant occupies an adversary position to the others and must proceed accordingly. Absent special circumstances, this second phase will proceed like any other action. Accordingly, when there is no genuine issue of material fact that justifies continuing to trial, the second stage may be adjudicated on a summary-judgment motion and a default judgment may be entered against a claimant who fails to appear or otherwise defend.[84]

In the present motion, Harris urges the Court to complete the second step. Pursuant to *Rhoades*, a motion for summary judgment is an appropriate vehicle for doing so.

### 3.    Merits of Harris's Motion

Harris asserts that she is "the only claimant who has timely asserted a claim to the funds" at issue here, meaning that "[t]here is no genuine dispute as to the material facts upon which [the instant motion] is based."[85] Specifically, Harris avers, citing Plaintiff's complaint and her answer, that: (1) Decedent designated her as the primary beneficiary of the policy;[86] (2) Harris made a claim upon the policy;[87] and (3) Harris "filed an Answer asking the Court to allow her to obtain all of the

---

[83] Rec. Doc. 53 at pp. 1–2.

[84] CHARLES A. WRIGHT & ARTHUR R. MILLER *ET AL.*, 7 FEDERAL PRACTICE & PROCEDURE CIVIL § 1714 (3d Ed. 2014).

[85] Rec. Doc. 40–1 at p. 4.

[86] *Id.* at p. 2 (citing Rec. Doc. 1–2 at p. 7). *See also* Rec. Doc. 8 at p. 2 (admitting Plaintiff's factual allegations that Decedent designated Harris the primary beneficiary of the policy).

[87] *Id.* at p. 2.

insurance proceeds . . . because she was the only named primary beneficiary under the policy at the time of [Decedent's] death."[88] Harris further contends that no other claimant has timely filed a claim to the funds currently held in the registry of the Court.[89]

### a.   Triable Issues

In *Syms v. McRitchie*, the Fifth Circuit held that an interpleader claimant must ordinarily "file an answer in interpleader, setting out his claim to the *res* in contest."[90] Citing *Syms*, Wright and Miller further explain that in interpleader actions,

> Each claimant should file an answer setting out any defenses to the interpleader action, a statement of the claim to the res in contest, and any additional claims against the stakeholder or the other claimants within the limits on counterclaims and cross-claims in interpleader proceedings discussed later in this section. If interpleader is ordered, each claimant should respond to the claims of the other claimants by denying their validity so that issue is joined.[91]

In the present case, Plaintiff's complaint contains allegations and related documents suggesting that before the action was filed: (1) Ulysses Gibson contested the validity of Decedent's decision to designate Harris as the  primary beneficiary under the insurance policy;[92] (2) Harris assigned $12,509.10 of the policy proceeds to Forethought;[93] and (3) Harris assigned $10,951.40 of the policy

---

[88] Rec. Doc. 40–1 at p. 4.

[89] Rec. Doc. 40–1 at p. 4.

[90] 187 F.2d 915, 919 (5th Cir. 1951). In *Syms*, the Fifth Circuit stated this general rule, but nonetheless affirmed the district court's order granting judgment to a claimant who had not filed an answer, since that claimant had successfully moved to dismiss the only other rival claimant's claim. *Id.*

[91] CHARLES A. WRIGHT & ARTHUR R. MILLER *ET AL.*, 7 FEDERAL PRACTICE & PROCEDURE CIVIL § 1714 (3d Ed. 2014).

[92] Rec. Doc. 1 at pp. 4–5 (citing Rec. Doc. 1–2 at pp. 11; 22).

[93] *Id.* at pp. 4–6 (citing Rec. Doc. 1–2 at pp. 12–13).

proceeds to Charbonnet-Labat.[94] Nonetheless, Plaintiff has been released from this interpleader action, and as the Court moves on to the second step of the proceedings, it is incumbent upon the claimants themselves to assert their interests, if any, in the policy proceeds.[95] Specifically, on this motion, the claimants must identify genuine issues of material fact that prevent the Court from granting summary judgment to Harris.  As noted above, the present motion is unopposed. Therefore, although the Court deems the parties' failure to respond to be a statement of no opposition,[96] the Court will now consider whether, based on the papers before it, Harris's arguments have merit.[97]

### i.      Forethought

Forethought has filed an answer "renounc[ing] and abandon[ing] any interest it may have or have had"[98] in the policy proceeds. In its answer, Forethought makes no allegations that call into question Harris's allegations; additionally, as noted above, Forethought has not filed an opposition to Harris's motion. Therefore, Forethought has not pointed to any genuine issues of material fact that would  prevent this Court from granting judgment to Harris as a matter of law.

### ii.      Charbonnet-Labat

Charbonnet-Labat has filed an answer seeking "judgment in their favor" as well as "all general and equitable relief,"[99] but has made no specific claims upon the policy proceeds. Rather,

---

[94] *Id.* at p. 6 (citing Rec. Doc. 1–2 at p. 28

[95] *See Syms*, 187 F.2d at 919.

[96] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350 (5th Cir. 1993).

[97] *See John v. State of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698 (5th Cir. 1985); *Braly v. Trail*, 254 F.3d 1082 (5th Cir. 2001).

[98] Rec. Doc. 50 at p. 4.

[99] Rec. Doc. 22 at p. 4.

Charbonnet-Labat only: (1) admits its status as a Louisiana corporation with a principal place of business in New Orleans; (2) denies that this Court has subject-matter jurisdiction and is the proper venue for this action; (3) avers that certain allegations "do not require a response" from it; and (4) denies many of the complaint's allegations "for lack of justification to justify [sic] a belief therein,"[100] including Plaintiff's allegations that Gibson designated Harris as the policy's primary beneficiary, that Harris made a claim upon the policy, and that Harris assigned $10,951.40 in policy proceeds to Forethought.[101]

In its answer, Charbonnet-Labat does not appear to make any specific claims to the policy proceeds. To the extent that Charbonnet-Labat's answer can be construed as making such a claim, its allegations do not suffice to create a genuine issue of material fact. Although this Court construes all facts and inferences in nonmovants' favor when deciding motions for summary judgment, nonmovants like Charbonnet-Labat "may not rest upon mere the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[102] Charbonnet-Labat has filed an answer, but has not responded to the present motion. Therefore, Charbonnet-Labat has "rest[ed] upon the mere allegations or denials of [its] pleading," and has consequently failed to identify any genuine issues of material fact.

---

[100] Rec. Doc. 22 at pp.1–4.

[101] Rec. Doc. 22 at p. 3.

[102] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1129 (5th Cir. 2014) (citations omitted).

### iii.     Ulysses Gibson

As an initial matter, the Court considers whether Ulysses Gibson, who has not filed an answer or otherwise participated in this litigation at all, has been properly served, such that the Court may exercise personal jurisdiction over him.[103]

In this federal civil action, proper service of process must comport with Federal Rule of Civil Procedure 4. Pursuant to Federal Rule of Civil Procedure 4(e), "an individual–other than a minor, an incompetent person, or a person whose waiver has been filed–may be served within a judicial district in the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]." The record contains an "Affidavit of Service" stating that on January 4, 2014, a summons and complaint were served upon "Pamela Gibson, the sister of Ulysses S. Gibson, a person of suitable age and discretion . . . [at the] intended recipient's Home within the state."[104] In accordance with Rule 4(e), this affidavit states that a copy of the summons and complaint were left with Pamela Gibson, a person of suitable age and discretion, at Ulysses Gibson's home. Therefore, based upon this representation, Ulysses Gibson has been properly served with a copy of Plaintiff's complaint.

The Court also considers whether Ulysses Gibson was served with the present motion. Federal Rule of Civil Procedure 5 governs service and filing of "pleadings and other papers," and provides, in part:

(a)     Service: When Required.

---

[103] *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Mississippi Publishing Corp. v. Murphee*, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.")).

[104] Rec. Doc. 16.

(1)    In General. Unless these rules provide otherwise, each of the following papers must be served on every party:

    (A)    an order stating that service is required;

    (B)    a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants;

    (C)    a discovery paper required to be served on a party, unless the court orders otherwise;

    (D)    a written motion, except one that may be heard ex parte; and

    (E)    a written notice, appearance, demand, or offer of judgment, or any similar paper.

(2)    If a Party Fails to Appear. No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4.

The Clerk of Court issued an entry of default against Ulysses Gibson pursuant to Federal Rule of Civil Procedure 55(a) on February 11, 2014.[105] Harris filed the present motion on June 27, 2014.[106] The procedural posture of this case is thus closely analogous to *New York Life Ins. Co. v. Brown*,[107] in which the Fifth Circuit construed Federal Rule of Civil Procedure 5 in the context of a summary judgment motion involving an interpleader defendant against whom default had been entered. In *New York Life*, the plaintiff, having been properly served, attended a telephonic settlement conference in the matter.[108] Just over a month later, the plaintiff called the defendant's attorney and informed her that "he had not responded because he had been out of town," and that

---

[105]  Rec. Doc. 21.

[106]  Rec. Doc. 40.

[107]  84 F.3d 137 (5th Cir. 1996).

[108]  84 F.3d at 140.

"he was unwilling to stipulate" to an issue in the case.[109]  Despite this communication, the plaintiff never filed an answer.[110] The defendant subsequently had a default entered against the plaintiff, and thereafter another interpleader claimant filed a motion for summary judgment.[111] Two attempts to mail the motion to the plaintiff proved unsuccessful, and the court ultimately granted the interpleader claimant's motion for summary judgment.[112]  Subsequently, the plaintiff sued the defendant, arguing, among other things, that he did not receive notice of the motion for summary judgment.[113]

The Fifth Circuit, analyzing Federal Rule of Civil Procedure 5(a)(2), considered whether the plaintiff, who had been placed in default, took any action in the matter that "rose to the level of appearance," such that he would be entitled to notice of the motions. Defining an "appearance" broadly as not only "physical appearance in court or the actual filing of a document in the record," but also "some presentation or submission to the court," including "a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim," the court concluded that the plaintiff's participation in the telephone conference and the plaintiff's telephone call to the defendant both constituted appearances entitling the plaintiff to notice of the motions.

Applying *New York Life* here, the record contains no indication that Ulysses Gibson has acted, either formally or informally, to give a "clear indication" of his intention to contest Harris's

---

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.* at 141.

claim after the present case was filed and Ulysses Gibson was served. Therefore, under Federal Rule of Civil Procedure 5(a)(2), as construed in *New York Life*, Ulysses Gibson did not enter an appearance and therefore was not entitled to service of the motion. Furthermore, no "new claims for relief" were filed against Gibson after the Clerk of Court's entry of default against him, such that he would be entitled to service under Rule 4.

Even assuming that Gibson were entitled to notice of the motion, Federal Rule of Civil Procedure 5(a)(1)(B) provides that the motion must be served in one of the following ways:

(1)  Serving an Attorney. If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.

(2)  Service in General. A paper is served under this rule by:

(A)  handing it to the person;

(B)  leaving it:

(i)  at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii)  if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C)  mailing it to the person's last known address--in which event service is complete upon mailing;

(D)  leaving it with the court clerk if the person has no known address;

(E)  sending it by electronic means if the person consented in writing--in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or

(F)  delivering it by any other means that the person consented to in writing--in which event service is complete when the person making service delivers it to the agency designated to make delivery.

(3)     Using Court Facilities. If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E).

Additionally, Local Rule 5.4 provides that:

Every document filed after the initial complaint must bear a certificate by the attorney or party who files it that, contemporaneously with or before filing, copies have been served on all parties or their attorneys in a manner authorized by FRCP 5(b)(2) or via the court's CM/ECF system.

Applying Federal Rule of Civil Procedure 5(b) here, the present motion includes a "Certificate of Service" stating that John W. Redmann, Harris's attorney, certifies that "the above and foregoing has, this 27th day of June, 2014, been served upon all parties or their attorneys, either by hand delivery, facsimile, United States mail, and/or through the court's CM/ECF system."[114] Based upon this representation, Ulysses Gibson has been served with the present motion.

Despite being served with a summons and complaint, Gibson has not filed an answer. Although Plaintiff asserts in its complaint that Ulysses Gibson disputed the validity of Harris's designation as primary beneficiary,[115] Ulysses Gibson has not filed any pleading before this court, and has not opposed the present motion. Accordingly, Ulysses Gibson has not identified a genuine issue of material fact regarding the validity of Decedent's designation of Harris as the policy's primary beneficiary.

### iv.     No Genuine Issues of Material Fact

None of Harris's rival claimants have opposed the present motion, and none of the papers filed by these claimants and referenced in the present motion show that there is a genuine issue of

---

[114]  Rec. Doc. 40–1.

[115]  Rec. Doc. 1 at pp. 4–5.

material fact. Therefore, pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate at this time.

### b.       Harris's Right to the Proceeds

This action calls upon the Court to adjudicate the rights of rival claimants to the proceeds of an insurance policy. On the present motion for summary judgment, the Court must ultimately determine whether Harris, the moving party and a claimant to these proceeds, "is entitled to judgment as matter of law."[116] Although it is undisputed that Harris was the primary beneficiary of the policy, and also undisputed that Harris filed a claim to the proceeds of that policy, Harris has not briefed the Court on the law governing her alleged entitlement to the insurance proceeds.

Under Louisiana law, "[i]f the policy is validly issued and the proceeds are timely demanded, there is usually very little difficulty in determining the proper beneficiary."[117] In the present case, the record contains the following documents, the authenticity of which has not been questioned: (1) a "Beneficiary Change Request" form dated October 11, 2012, that designates Nakia Harris as the policy's primary beneficiary;[118] (2) a death certificate identifying Decedent's date of death as November 24, 2012;[119] and (3) forms dated within one week of Decedent's death that appear to be Harris's claim upon the insurance policy.[120] Although, as noted above, these forms appear to record assignments to Forethought and Charbonnet-Labat, neither Forethought nor Charbonnet-Labat have

---

[116] FED. R. CIV. P. 56.

[117] WILLIAM SHELBY MCKENZIE AND H. ALSTON JOHNSON, III, 15 LA. CIV. L. TREATISE, INSURANCE LAW & PRACTICE, § 8:12 (4th Ed. 2014).

[118] Rec. Doc. 1–2 at p. 7.

[119] *Id.* at p. 31.

[120] *Id.* at pp. 24–30.

opposed the present motion or otherwise questioned Harris's entitlement to the all of the policy's

proceeds. Therefore, since Harris's motion is supported by undisputed documents establishing that

she was the primary beneficiary of the policy at the time of Decedent's death, and that she made a

claim upon the policy within one week of Decedent's death, her motion for summary judgment has

merit, and will be granted.

### 4.      Attorney's Fees

In her motion, Harris urges the Court to permit one-third of the policy proceeds to be paid

to Harris's counsel of record, John W. Redmann, pursuant to her contingency fee agreement with

Redmann, with the balance of the proceeds paid to her.[121]

Although some statutes expressly authorize the Court to award attorney's fees,[122] neither

Rule 22 nor § 1335 contain such an authorization, and Rule 56 only authorizes the Court to award

attorney's fees to sanction a party who files an affidavit or declaration in bad faith.[123] In support of

the proposition that the Court may award fees to Redmann, Harris cites *Rhoades*. In that case, the

Fifth Circuit addressed the availability of attorney's fees in an interpleader action, and instructed

that:

> A district court has the authority to award reasonable attorney's fees in interpleader
> actions. The award of attorney's fees is in the discretion of the district court, and fees

---

[121]  Rec. Doc. 40–1 at p. 7.

[122]  *See, e.g.* 29 U.S.C. § 216(b) (providing that reasonable attorney's fees shall be available in certain FLSA actions).

[123]  CHARLES A. WRIGHT, ARTHUR R. MILLER, *ET AL.*, 7 FEDERAL PRACTICE & PROCEDURE § 1719 (3d Ed. 2014) ("Neither Rule 22 nor the interpleader statute contains an express reference to costs or attorney's fees, although the latter does state that the court has the power to 'make all appropriate orders to enforce its judgment.'"); Fed. R. Civ. P. 56(h) ("If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.").

are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants.[124]

Applying these rules, the Fifth Circuit affirmed the district court's award of attorney's fees to the party who commenced the interpleader action, reasoning that the award was proper because this party "submitted . . . an application for attorney's fees which detailed his attorney's actions to properly represent him in the interpleader action," and because the party participated in the action as a "disinterested stakeholder."[125]

The Fifth Circuit has subsequently reiterated *Rhoades*'s holding that "fees may be awarded" in interpleader actions "when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants."[126] Other Fifth Circuit decisions have affirmed district courts' awards of attorney's fees to stakeholders,[127] and have also affirmed the denial of attorney's fees to claimants premised upon the district court's finding that the fee applicant acted as a claimant, rather than as a stakeholder), in the interpleader action.[128] Wright and Miller likewise state that "[t]ypically," attorney's fees "are available only when the party initiating the interpleader is acting as a mere stakeholder, which means that the party has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability."[129]

---

[124] 196 F.3d at 603.

[125] *Id.*

[126] *N.Y. Life Ins. & Annuity Corp. v. Cannatella*, 550 Fed. App'x 211, 217 (5th Cir. 2013).

[127] *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983) (affirming award of fees to stakeholder); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 467–68 (5th Cir. 1971) ("The law is clear that a district court has the authority to award within its discretion *stakeholder costs,* including a reasonable attorneys' fee in interpleader actions") (emphasis added).

[128] *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976).

[129] Charles A. Wright, Arthur R. Miller, *et al.*, 7 Federal Practice & Procedure § 1719 (3d Ed. 2014).

Pursuant to *Rhoades*, Harris, a claimant to the policy proceeds deposited with the Court by Plaintiff (the stakeholder) is not entitled to court-ordered attorney's fees.  Furthermore, even if Harris were entitled to court-ordered attorney's fees, she has provided the Court with no support for her requested award of $11,615.31. In *Rhoades*, the stakeholder provided an application and a supporting affidavit to the Court. Here, Harris indicates that she has a "contingency fee agreement"[130] with Redmann, but does not support that assertion with any documentation. More importantly, no other defendant has made a claim to the money deposited with the Court, and so there is no need for the Court to apportion attorney's fees. Accordingly, Harris's request for court-ordered attorney's fees is not supported, probably unnecessary, and will be denied.

## IV. Conclusion

To the extent that Harris's unopposed "Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment"[131] seeks summary judgment in her favor and an award of all of the policy proceeds, her motion has merit. Therefore, the Court will grant Harris's motion to the extent that it seeks this relief. However, Harris's unopposed motion is without merit to the extent that it seeks court-ordered attorney's fees. Therefore, the Court will deny Harris's motion insofar as it seeks court-ordered attorney's fees. Accordingly,

**IT IS HEREBY ORDERED** that Harris's "Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment"[132] is **GRANTED IN PART AND DENIED IN PART.**

---

[130] Rec. Doc. 40–1 at p. 7.

[131] Rec. Doc. 40.

[132] *Id.*

29

**IT IS FURTHER ORDERED** that Harris's "Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment"[133] is **GRANTED** to the extent that it urges the Court to order judgment in her favor and award her all of the policy proceeds. Funds placed in the registry of the Court will be disbursed pursuant to Federal Rule 67.3.

**IT IS FURTHER ORDERED** that a copy of this order be mailed to Defendant Ulysses Gibson by the Clerk of Court, at the address listed for him in the record.

**IT IS FURTHER ORDERED** that Harris's "Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment" is **DENIED** to the extent that it seeks court-ordered attorney's fees.

New Orleans, Louisiana, this __21st__ day of January, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[133] *Id.*